IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RAYMOND DAVID LEACH III                                          PETITIONER

V.                                    No.   16-2023

WENDY KELLEY, Director,
Arkansas Department of Correction                               RESPONDENT

## Magistrate Judge's Report and Recommendation

Before the undersigned   the petitioner's Habeas Corpus Petitions (ECF No. 1) filed

February 5, 2016 under 28 U.S.C. Section 2254.   The State filed its Response (ECF No. 9) on

March 9, 2016 and the Petitioner filed his Reply (ECF No. 16) on July 21, 2016. An order was

entered on September 13, 2016 (ECF No. 17) appointing the Federal Public Defender and setting

the matter for a hearing. After several appeals and continuances a hearing was conducted on March

2, 2018 and the matter is now ready for a Report and Recommendation.

### I.   Background

A Polk County, Arkansas jury convicted the petitioner, Raymond David Leach III, of the

capital murder of Christopher Casey. The Petitioner filed a timely appeal claiming five points: (1)

that the circuit court erred in not allowing appellant to cross-examine Tyler Prine regarding threats

he allegedly made to another witness; (2) that the circuit court erred in denying appellant's motion

for directed verdict on capital murder; (3) that the circuit court erred in denying appellant's motion

to suppress his statement; (4) that the circuit court erred in allowing inadmissible evidence; and (5)

that the circuit court erred in allowing a law-enforcement officer to give his opinion. He was

sentenced to life imprisonment without parole.   His conviction was affirmed April 26, 2012 in

*Leach v. State*, 2012 Ark. 179,402 S.W.3d 517.

The petitioner then timely filed a pro se petition for post-conviction relief pursuant to Ark.

R. Crim. P. 37.1 et seq. The circuit court denied the Rule 37 petition without a hearing. Acting pro

se, the petitioner appealed the denial of the Rule 37 petition, and on April 9, 2015, the Supreme

Court of Arkansas dismissed the appeal before any briefs were filed because it was obvious from

the record that the petitioner could not prevail on appeal. *Leach v. State*, 2015 Ark. 163, 459

S.W.3d 795.

The Petitioner filed the current Habeas Petition on February 5, 2016 alleging the following:

Ground One: That the trial court erred in not allowing evidence of a specific instance of
conduct of a witness to show he wasn't truthful. (ECF No. 1, p. 7).

Ground Two: That the trial court erred in not granting appellant's motion for Directed
verdict where there was insufficient evidence for a conviction. (Id., p. 8).

Ground Three: That the trial court erred in allowing statement of Raymond Leach when
part of it was before the Miranda Rights were given.   (Id., p. 10).

Ground Four: That the trial Court erred with allowing a portion of the video where he (sic)
stated that Kevin Burkett tried to call him, to get his girls taken away from him. (Id.,
p. 11).

Ground Five: That the trial Court erred in allowing an officer to testify that something on
appellant's had appeared to be blood. (Id., p. 13).

Ground Six: Ineffective assistance of counsel-Failed to make Appellant aware of possible
plea bargain negotiations. (Id., p. 14).

Ground Seven: Causation rest upon Tyler Prine. (Id., p. 16).

Ground Eight: Counsel failed to procure the attendance of witnesses material to defense.
(Id., p. 17).

## II. Discussion

**Factual Summary:**

The jury returned a verdict of guilty on capital murder, and the court sentenced appellant to

life in prison. The judgment and commitment order was filed on June 22, 2011, and appellant filed

a timely notice of appeal the following day.   *Leach v. State*, 2012 Ark. 179, (2012). The following

is a factual summary as set forth in the Arkansas Supreme Court's decision:

On July 17, 2009, at approximately 3:00 a.m., Officer Bo Hayes with the Polk County Sheriff's Department responded to an emergency call of a possible murder at an intersection in Cove, Arkansas. Upon arriving, he discovered four people, including appellant, gathered   near a pick-up truck. Christopher Casey, who had been stabbed in the neck, face, and chest, was found in the driver's seat of the pick-up truck. The other three people present-Tammy Shepard, Jack Shepard, and Tyler Prine-all indicated to Officer Hayes that appellant had stabbed Casey. Appellant was placed under arrest and later charged with premeditated and deliberate capital murder.

Appellant's jury trial was held in Polk County Circuit Court in June 2011 where the following evidence was presented. Jack Shepard testified that when he left his home between 2:30 and 2:45 a.m. to go to work on July 17, 2009, he noticed Tyler Prine's truck blocking the road.   Prine was Shepard's cousin by marriage and lived nearby. When Shepard stopped, he saw Prine and a "skinny dud" whom he identified in court as appellant; both were drunk; and appellant appeared agitated, walking in circles and throwing his hands in the air. Shepard testified that he saw appellant toss something into the back of the truck. Prine then walked over to Shepard and said that appellant had just stabbed and killed the driver of the truck. Shepard exited his truck to go check on the driver. Shepard stated that he heard appellant repeatedly say that he had stabbed the driver because Prine wanted appellant to do so and that he and Prine needed to take the truck and get rid of the body. After Shepard found the driver slumped over the steering wheel and bleeding profusely, he returned to his house to retrieve his wife, Tammy Shepard, who was a nurse, and to call 911.

Tyler Prine testified that after work on July 16, 2009, he went to a party where he drank alcohol and smoked marijuana. He stated that appellant was there and was "pretty drunk"   Prine testified that he left the party with appellant and Casey to go to Kevin Burkett's house, was unsure how long they stayed, but remembered passing out in his truck and asking appellant and Casey to take him home. With Prine in the middle of the truck, Casey drove, and appellant was seated by the passenger door. Prine said that when they were near his house, appellant jumped over Prine and began punching

Casey. When Prine attempted to grab appellant, Prine realized that appellant had a knife. Prine and appellant jumped out of the truck. Appellant asked what he ought to do with the knife, and Prine said to put it in the tool box. Prine testified that he asked appellant why he had stabbed Casey and that appellant said that he thought Prine wanted him to do so. Prine denied asking appellant to kill Casey. After Shepard came back with his wife, they all waited for the police to arrive. Prine stated that he told the police the knife was in the tool box.

Buck Bailey of the Polk County Sheriff's Office testified that he transported appellant, who was "very intoxicated" to the jail but that despite appellant's intoxication, he followed orders. Special Agent Gordon Diffee with the Arkansas State Police testified that he collected evidence from the crime scene, including a butterfly knife with a six-inch blade found in the truck's tool box, and that he took photographs of the scene and appellant. During Agent Diffee's interview with appellant, he claimed that he had been drinking heavily and taking prescription drugs on the evening of July 16, 2009; that he did not remember getting in the truck with Prine and Casey; that he did not remember stabbing Casey; and that he did not kill anyone. He also admitted that he owned several knives, including a butterfly knife with a six-inch blade. Dr. Paul DeYoub, who performed a court-ordered psychological examination of appellant, testified that appellant admitted that he owned the knife that Agent Diffee had recovered from the crime scene.

The State also presented the testimony of Joshua Kyle, who testified that he saw appellant at a party on the evening of July 16, that appellant was "extremely intoxicated" and that he "talked all night about killing somebody."    Kyle stated that appellant was talking like he could "whop [sic] anybody's butt and no one [could] stop him."

Forensic experts testified that there was blood on the knife found in the tool box of Prine's truck and on the pants appellant was wearing when he was arrested. DNA tests matched the blood on those items to Casey within all scientific certainty. The medical examiner testified that Casey died from multiple stab wounds, including a nonsurvivable stab wound to the chest that perforated his heart. The medical

examiner stated that the wounds could have been made with the knife found in the tool box.

The Petitioner has raised two categories of error in his 2254 petition: (A) Trial Court Error and (B) Ineffective Assistance of Counsel.

## A.  Trial Court Error:

**Ground One:**   That the trial court erred in not allowing evidence of a specific instance of conduct of a witness to show he wasn't truthful.[1] (Doc. 1, p. 7).

The Petitioner is contending that the court committed error in not allowing his attorney to ask certain questions of a witness, Tyler Prine. (Id., p. 21).   According to his brief his attorney "was going to further inquire if Tyler Prine had threatened Adam Kyle (a potential witness for the defense) if he came to court and testified." (Id., p. 24).

This issue was specifically raised by the Petitioner in his appeal and the dialogue between the Court, Defense and Prosecution was set forth in the court's opinion. The Arkansas Supreme Court held that the trial court did not commit error because:

> "Based on this court's precedent in Halford, appellant did not properly preserve his argument regarding exclusion of evidence where he did not proffer what Prine's testimony would have been. This is not a case where the substance of evidence is clear from the context of the questions being asked because appellant's counsel never asked a question relating to the alleged threats-all counsel asked was whether Prine knew the other witness and had talked to him recently. This court would have to speculate, based on those basic introductory questions, what the evidence appellant sought to introduce was.   From the discussion at the bench, it appears that the court and both parties knew appellant

---

[1]Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. Ark. R. Evid. 608(b)

wanted to question Prine about threatening a witness; however, to properly
preserve the issue, appellant needed to be more specific on the record about
what he wanted to ask Prine and what he believed the responses to those
questions would be so this court could conduct a proper review."   Leach v.
State, 2012 Ark. 179, 10, 402 S.W.3d 517, 525 (2012).

The Halford case stated that " our Rules of Evidence require that when challenging the

exclusion of testimony, an appellant must make a proffer of the excluded evidence at trial so that

this court can review the decision, unless the substance of the evidence is apparent from the

context." *Halford v. State*, 342 Ark. 80, 86, 27 S.W.3d 346, 350 (2000).

The trial court's decision was supported by the record and adequately reviewed by the

Arkansas Supreme Court. A federal court is precluded from substantively considering a habeas

corpus claim that a state court has disposed of on independent and adequate nonfederal grounds,

including state procedural grounds. *Clemons* v. *Luebbers,* 381 F.3d 744, 750 (8th Cir. 2004).[2]

**Ground Two**: That the trial court erred in not granting appellant's motion for Directed

verdict where there was insufficient evidence for a conviction. (Doc 1, p. 8).

The Petitioner's argument on this ground appears to be that the evidence " was not

sufficient to show premeditation and deliberation to support Petitioner's conviction. The evidence

---

[2]It does not appear that the Petitioner raised the issue of his attorney's failure to preserve this issue for appeal in his Rule 37.1 Petition. The summary of issues raised is set forth in the Arkansas Supreme Court opinion as follows: "In his petition for Rule 37.1 relief, appellant alleged that he was under the influence of drugs and alcohol to the extent that he had no memory of what occurred; he was so incoherent  that Prine could have convinced appellant that appellant had indeed stabbed the victim; he did not carry "that butterfly knife anywhere because it was so large and cumbersome"; Prine was the one who was angry at the victim; it was Prine who was driving, and the forensic evidence showed that it would have been practically impossible for appellant to inflict the wounds to the victim; Prine had the key to the tool box where the knife was found; Prine committed perjury concerning where certain pills were obtained; Prine may have given appellant the pills that impaired his thinking or maybe spiked his drink and then Prine killed the victim. Appellant further stated in the petition that, even if he did in fact kill the victim, he would not have done so if Prine had not supplied the drugs that affected him so adversely. He argued that, under the circumstances that suggest Prine was culpable, counsel was ineffective for not asking that the jury be instructed on accomplice liability. He also contended that counsel was ineffective for not making him aware of three plea bargains, one of which he would have accepted had he been made aware of it. Leach v. State, 2015 Ark. 163, (2015)

shows that your Petitioner did not have the mental capacity to form' premeditation and deliberation." (Id., p. 26) The Petitioner's contention is that he was taking Xanax and Valium as well as drinking alcohol. This issue also was specifically raised on appeal. The Arkansas Supreme Court noted that Voluntary Intoxication " is not an affirmative defense in criminal prosecutions. See *White v. State*, 290 Ark. 130, 717 S.W.2d 784 (1986)." The court also noted that there was ample other evidence to support the jury's conclusion that the murder was premeditated, because the Petitioner bragged that he was going to kill someone, several witnesses heard the Petitioner's claim that he had stabbed the victim, witnesses saw him throw the knife into the back of his truck, and that he needed to get rid of the body. *Leach v. State*, 2012 Ark. 179, 7, 402 S.W.3d 517, 523 (2012).

A state court's conclusion that the evidence was sufficient to support the conviction is entitled to great deference. E.g., *Cassell v. Lockhart*, 886 F.2d 178, 179 (8th Cir. 1989), cert. denied, 493 U.S. 1092 (1990). A federal court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate nonfederal grounds, including state procedural grounds. *Clemons* v. *Luebbers,* 381 F.3d 744, 750 (8th Cir. 2004).

The court's decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; nor was its decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 United States Code § 2254( d).

**Ground Three:** That the trial court erred in allowing statement of Raymond Leach when part of it was before the Miranda Rights were given. (Id., p. 10)

The Petitioner argues that "Under the Fruit Of The Poisonous Tree Doctrine evidence

gathered by or deprived from an illegal interrogation is inadmissible because the original taint, through knowledge of facts obtained are inadmissible." The Petitioner also raised this issue before the Arkansas Supreme Court which held that " appellant never made this argument to the circuit court and we decline to address it on appeal.   It is well settled that an appellant must raise and make an argument at trial in order to preserve it for appeal; this is true even when the issue raised is constitutional in nature. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007).   Leach v. State.

The court also notes that the officer testified that he advised the petitioner of his Miranda rights prior to asking him any questions and that he did not question him until after he had been in custody for twenty-four hours.   (ECF No. 9-3, p. 82). The record does reflect that the officer asked the Petitioner his name, address, date of birth, and if he understood why he had been arrested prior to advising him of his rights. (Id., p. 94-95). It was these series of preliminary questions that seem to form the basis for the Petitioner's argument.   The rights form and video were introduced at the motion to suppress hearing and after hearing argument from both sides the court denied the motion to suppress.[3]

The Motion to Suppress filed by the Defendant (ECF No. 9-2, pp. 222-223) only provided that the Defendant's statement was not voluntary and that his rights were not adequately explained to him.   No fruit of the poisonous tree argument was made in the motion to suppress or at the time of the hearing.

The court's decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. See *Arizona v. Fulminante*, 499 U.S. 279,285 (applying totality of circumstances test to claim that

---

[3]It should also be noted that there are no admissions to the murder in the Petition's statement.   The Petitioner repeatedly denies remembering anything about the incident and denies murdering anyone. (Doc. 9-3, pp. 94-111)

confession was involuntary). Nor was its decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 United States Code § 2254(d).

**Ground Four**: That the trial Court erred with allowing a portion of the video where he (sic) stated that Kevin Burkett tried to call him, to get his girls taken away from him. (Id., p. 11).

The Petitioner was asked by the Arkansas State Police officer if he had gone to Kevin Burkett's house recently.   In his response he states "Not that I recall. I hadn't been to Kevin's house."  (Doc. 9-3, p. 109).   Then, by way of explanation, he stated "I stay away from Kevin's house because Kevin don't like me anymore and he's the reason me and my ex-girlfriend broke up and I was trying to get back with my ex-girlfriend.   So, no. I stay away from Kevin.   I really don't like him a bit.   Because he wanted to try to call me a child molester and tried to get my girls taken away from me."  (Id.).

There is no evidence that the Petitioner's attorney sought or could have obtained the redaction of this portion of the Petitioner's statement.

**Ground Five:** That the trial Court erred in allowing officer to testify that something on appellant's had appeared to be blood. (Id., p. 13).

The Petitioner contends that the officer's opinion was not rationally based, that his testimony constituted circumstantial evidence which left the jury to speculate.   (ECF No. 1, p. 33).   The Arkansas Supreme Court stated as follows:

>        For his final point on appeal, appellant contends that the circuit
> court erred in allowing Agent Diffee to testify that when he took photographs of
> appellant at the crime scene, he had what appeared to be blood on his hand.
> Appellant claims that the agent's testimony was speculative and in violation of
> Arkansas Rule of Evidence 701. Trial courts have broad discretion in deciding

evidentiary issues, and their decisions are not reversed absent an abuse of discretion. *Smith v. State,* 351 Ark. 468, 95 S.W.3d 801 (2003).   Moreover, this court will not reverse an evidentiary decision by the trial court in the absence of prejudice. *Marks v. State,* 375 Ark. 265, 289 S.W.3d 923 (2008).

The fact that testimony may be an opinion does not of itself render it inadmissible. *Larimore v. State,* 317 Ark. 111,877 S.W.2d 570 (1994). Pursuant to Arkansas Rule of Evidence 602, a witness may only testify to a matter where there is sufficient evidence to show that the witness has personal knowledge of the matter. Further, personal knowledge can be proved through the testimony of the witness. Ark. R. Evid. 602. Additionally, Arkansas Rule of Evidence 701 provides that if a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences that are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. We noted in Marks that

[i]n Carton v. Missouri Pacific Railroad Co., 303 Ark. 568,798 S.W.2d 674 (1990), we set out a three-prong test for determining admissibility under Rule 701. First, the testimony must pass the "personal knowledge" test of Rule 602. ld. Second, it must be rationally based, that is, the opinion must be one that a normal person would form on the basis of the facts observed. ld. Finally, the opinion must meet the "helpful" test. ld. 375 Ark. at 270, 289 S.W.3d at 927.

In this instance, the circuit court allowed Agent Diffee to testify that it appeared to him, while photographing [petitioner] at the scene shortly after the murder, that [petitioner] had blood on his hand. This opinion was based on Agent Diffee's personal experience as a law enforcement officer and observing [petitioner] at this particular crime scene; it was rationally based on Diffee's observations at the crime scene; and it was helpful for him in explaining why he took photographs of [petitioner]'s hands and to determine a fact in issue. Under these circumstances, we conclude that the circuit court did not abuse its discretion in allowing Agent Diffee to testify regarding his personal observation.   Leach, 2012 Ark. at 17-18,402 S.W.3d at 528-29.

The court's decision was not contrary to, and did not involve an unreasonable

application of, clearly established federal law, as determined by the Supreme Court

of the United States; nor was its decision based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding. See 28

United States Code § 2254(d).

**B. Ineffective Assistance of Counsel:**

The Sixth Amendment of the Constitution of the United States affords a criminal

defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme

Court "has recognized that 'the right to counsel is the right to effective assistance of

counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d

763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel

pursuant to § 2255.   *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000);   2254.

*Cox v. Wyrick,*   642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective

assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v.*

*Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel

"made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him]

by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by

demonstrating that counsel's performance "fell below an objective standard of

reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471

(2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

**Ground Six:** Ineffective assistance of counsel-Failed to make Appellant aware of possible plea bargain negotiations. (Id., p. 14).

The Petitioner filed a timely Rule 37 Petition claiming, inter alia, that his attorney failed to communicate a plea offer. In the Petitioner's Brief he states that his sister visited Deputy Prosecuting Attorney Jim Henderson's Office at some time after his conviction and the Deputy advised that "he had offered to negotiate a plea bargain agreement with Counsel Davis on three (3) separate occasions. On the third (3rd) Occasion the offer was for twenty five (25) years, and Counsel Andi Davis stated that she didn't need a plea bargain because she was going to win the case. Counsel Andi Davis never mentioned or advised her client about any of Deputy Prosecuting Attorney Jim Henderson's offers to negotiate a plea bargain violating Petitioner's Sixth Amendment."

The Petition's brief is reciting the allegations set forth in the Affidavit of Suzanne Leach dated August 12, 2012 which states "shortly after my brother's trial the prosecution attorney said he needed to talk to me so I went to see him…..He told me that they had been trying to get ahold of me to let me know that they had asked or talked to Andie Davis about a plea, they were gonna start with 35 but would go to 25 years each time she just walked off but the third time she just told them she could win…"   (ECF No. 1, p. 109).

The trial court denied the Rule 37.1 Petition without a hearing holding that the "affidavit signed by Jim Henderson, Deputy Prosecuting Attorney, states that no such offer was ever made." (ECF No. 1, p. 117).   The Arkansas Supreme Court's decision, affirming the trial court's denial of his Rule 37 motion, stated that the court placed heavy reliance on an affidavit from the Prosecuting Attorney, Andy Riner, that no plea offer had been made. The Affidavit states:

I, Andy Riner, affirm that no plea offers were made to Defense Counsel. The only discussion of a plea was initiated by Attorney Randy

Rainwater who asked your Affiant for a plea to manslaughter and credit for
time served, which was rejected by the State. Further, Chief Deputy
Prosecuting Attorney, Jim Henderson asked counsel for Defendant, Andy [sic]
Davis, if Leach were interested in a plea offer and received no response.
*Leach v. State*, 2015 Ark. 163, 8, 459 S.W.3d 795, 801 (2015)

The Arkansas Supreme Court made no reference to the Affidavit of Suzanne Leach

and in the dissent Justice Danielson noted that even the affidavit of Andy Riner indicated

that the Petitioner was "invited" to propose a plea but never received a response. Justice

Danielson noted that "At the very least, Leach has presented a question that I believe

warrants a hearing to develop the facts further. Accordingly, I respectfully dissent."*Leach*

*v. State*, 2015 Ark. 163, 9, 459 S.W.3d 795, 802 (2015).

Because of the conflict between the Prosecuting Attorney's affidavit and the

Suzanne Leach affidavit the court set the matter for a hearing to determine the credibility of

the conflicting affidavits. (ECF No. 17). At the hearing the following witnesses testified in

relevant substance as follows:

**Tim Williamson:** Tim Williamson testified that he was the elected prosecuting

attorney at the time the Petitioner was charged with capital murder. He testified that the

only attorney he ever dealt with was Randy Rainwater because he was the lead attorney and

the attorney that he had a relationship with for many years. He had waived the death

penalty very early in the case because he did not believe the crime justified it but he never

made a "formal" plea offer to the Petitioner's attorney. The only plea discussions that he

had was an informal conversation with attorney Rainwater during an omnibus docket call.

Many defendant were present and waiting for the judge to come on the bench when Mr.

Rainwater asked him if he would consider a manslaughter or negligent homicide plea to

time served.   Mr. Williamson testified that he was incensed by that proposal and did not give it the least consideration. He did make some calculations on a Murder in the 1st degree but he never conveyed any offer to Mr. Rainwater because the family was opposed to anything other than a "life" sentence.   A petition for a mental exam was subsequently filed on behalf of the Petitioner and the report that he was competent to proceed did not come back until shortly before he left office. He was adamant in his testimony that he never made any plea offer to the Petitioner's attorney.

**James Henderson:** James Henderson testified that he was the Deputy Prosecuting Attorney hired by the newly elected prosecuting attorney (Andy Riner) and started work January 1, 2011. He testified that he would see Ms. Davis in District court from time to time and that he had a casual conversation with her that she should plea the Leach case. He suggested that she go to Mr. Riner and offer 25-30 years. He denied that he made any offer to plea the case or that he was authorized to offer any plea. He denied that he had contacted Suzanne Leach and told her that "he needed to talk to her" or that he told her that the state was willing to plea the case for 35 to 25 years. He did state that he saw Suzanne Leach in the city park many months after the trial and made the comment to her that her brother's case should have worked out.

**Andy Riner:** Andy Riner testified that he was elected Prosecuting Attorney and took office on January 1, 2011 and that he hired Mr. Henderson. He testified that he tried all of the felony cases and that Mr. Henderson was second chair on the Leach case but he was not authorized to make any plea offer. He testified that the affidavit prepared in the Rule 37 proceeding (ECF No. 9-10) was not signed by him but was signed by Mr. Henderson. He testified that the victim's family was difficult to deal with, and that he never

made a plea offer in the case.

**Raymond Leach:** Raymond Leach testified that he wanted to plea and told Ms. Davis that he wanted to plea but that she never brought him a plea offer.

A plea agreement is an agreement between the accused and the prosecutor, not an agreement between counsel and the prosecutor. *Rasmussen v. State*, 280 Ark. 472, 658 S.W.2d 867 (1983); see also A.R.Cr.P. 25.2. As such, counsel has the duty to advise his client of an offer of a negotiated plea. *Elmore v. State*, 285 Ark. 42, 44, 684 S.W.2d 263, 264 (1985). *See, e.g., Missouri v. Frye*, _ U.S. _, _,132 S.Ct. 1399, 1408 (2012) ("[a]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." (emphasis added)). The failure to communicate a plea-agreement offer to a defendant has been held to constitute ineffective assistance of counsel. *See Riggins v. State,* 329 Ark. 171, 946 S.W.2d 691 (1997

The State, however, is not obligated to make a plea offer in any criminal case. In the context of litigating claims for postconviction relief, the Eighth Circuit has held defense counsel's failure to procure a plea bargain is not sufficient grounds for an ineffective assistance of counsel claim. *Beans v. Black*, 757 F.2d 933 (8th Cir. 1985). Further, where the government and trial counsel both deny existence of a plea agreement offer and the record was sufficient to show conclusively that a formal plea offer never materialized, the district court properly denied a motion for postconviction relief. *Kingsberry v. United States*, 202 F.3d 1030 (8th Cir. 2000).

When competing affidavits are presented, it is a matter of credibility for the court to determine. *Houchins v. Home Care Professionals of Arkansas, Inc.*, 2012 Ark. App. 553,

7, 423 S.W.3d 655, 660 (2012) citing *Holloway v. State,* 363 Ark. 254, 213 S.W.3d 633 (2005). Suzanne Leach's affidavit which states that the prosecuting attorney informed her that "they had asked or talked to Andie Davis about a plea, they were gonna start with 35 but would go to 25 yrs each time she just walked off but the third time she just told them she could win that she wasn't gonna talk" (ECF No. 1, p. 109) was directly contradicted by the testimony of James Henderson.

It is clear from Mr. Henderson's testimony that he had passing conversations with Ms. Davis during the course of other court proceedings in District Court that she should try to work out the case with Mr. Riner. Nothing that Mr. Henderson said to Ms. Davis could have been construed as a plea offer by the state and Mr. Henderson verified that he was not authorized to make an offer and made no offer. His passing comments could only be construed as a general suggestion to Ms. Davis and not as any plea offer by the state.

Andy Riner testified that the family was extremely difficult to deal with and that he never made any plea offer to the defense.   He also testified that the affidavit (ECF No. 9-10, p. 33), which has his typewritten name on it, was actually signed by James Henderson. It is clear that the Circuit Judge who dismissed the Petitioner's Rule 37 petition knew the affidavit was signed by James Henderson and referred to it as such in his Order Denying Petition for Post-Conviction Relief Under Rule 37. (ECF No. 1, p. 117).

The Affidavit signed by Suzanne Leach, upon which the hearing was based, can, at best be attributed to Ms. Leach's faulty recollection of comments by Mr. Henderson, and, at worst, a fabrication of the comments by Mr. Henderson.

Because Suzanne Leach failed to testify and because her affidavit was directly contradicted by James Henderson her affidavit lacks credibility and the Petitioner's

˘17˘

contention that his attorneys were ineffective for failure to convey a plea offer from the state has no merit.

The Petitioner also contends in his Motion to Amend (ECF No. 34) that "According to Williamson, Randy Rainwater, the lead defense attorney on Petitioner's case, approached him sometime in late 2009 or early 2010 and proposed that Petitioner be allowed to plead guilty to manslaughter. Williamson rejected this proposal, but made a counter-offer of a plea to the lesser charge of first-degree murder, which would have carried a penalty in the range of 20 to 30 years imprisonment." (Id., p.3).

Tim Williamson, however, testified that Mr. Rainwater did suggest a plea to manslaughter or negligent homicide and credit for time served.   Mr. Williamson testified that he was incensed by that offer and dismissed it out of hand but he did do a calculation for Murder in the 1st Degree. He met with the family of the victim and they would not consider anything but a life sentence. He denied that he ever communicated any offer of Murder in the 1st Degree to Mr. Rainwater much less an offer that contained a term of years. The Defense subsequently filed a motion to have the Petitioner examined and the case was put in abeyance until that report was received. The trial date was subsequently set for a date after Mr. Williamson left office and he took no further action on the case.

The testimony of Mr. Williamson is explicit that he never made any plea offer to the Petition and there was no testimony by any of the Petition's attorneys to contradict his testimony. The Petitioner's claim that his attorney was ineffective for failing to convey a plea offer by Mr. Williamson is without merit.

**Ground Seven:** Causation rest upon Tyler Prine. (Id., p. 16).

The Petitioner alleges in his brief that: "Further even if Petitioner were the person

who committed the crime it would never have occurred except but for Tyler Prine

supplying Petitioner with an abundant amount of Xanax and Valium pills, both strong

mind altering drugs especially when taken with alcohol, therefore Tyler Prine is in large

part responsible for Christopher Casey's death." (Doc. 1, p. 47).

This issue was addressed by the Arkansas Supreme Court in the Petitioner's appeal

of the denial of his Rule 37.1 Petition. The court stated:

> Appellant also argued that he was entitled to postconviction relief on the
> ground that counsel was remiss in not requesting a jury instruction on
> accomplice liability. The exact basis on which appellant was alleging that Prine
> was an accomplice was unclear, but it appears to have been founded at least in
> part on the claim that Prine supplied him with the pills that resulted in his
> confused mental state, i.e., that Prine was as much to blame as appellant for
> appellant's commission of the offense.
>
> Appellant did not make a showing of ineffective assistance of counsel.
> To prevail under Rule 37.1, the petitioner must offer facts to show that
> counsel's failure to request an instruction prejudiced the defense to the extent
> that petitioner was deprived of a fair trial. Mathis v. State, 2014 Ark. 148, 2014
> WL 1344427 (per curiam). When it is asserted that counsel was ineffective for
> failure to make a motion or argument, the petitioner must show that the motion
> or argument would have been meritorious because the failure to make an
> argument that is meritless is not ineffective assistance of counsel. Id. Here,
> appellant did not show that establishing that Prine was an accomplice to capital
> murder would impact the outcome of appellant's case. Appellant had the burden
> of demonstrating that there was a rational basis for the instruction, and he failed
> to do so. Id.; *Davis v. State*, 2011 Ark. 433, 2011 WL 4840644 (per curiam).
>
> If appellant intended the allegation to be that he would not have been as
> culpable if he had Prine as an accomplice, **the law in Arkansas makes no
> distinction between the criminal liability of a principal and an accomplice.
> Ark.Code Ann. § 5-2-402(2) (Repl. 2006);** *Winters v. State***, 2013 Ark. 193,
> 427 S.W.3d 597.** *We* have held that under the accomplice-liability statute, a
> defendant may properly be found guilty not only of his own conduct but also

the conduct of his accomplice. *Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991). When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Davis v. State*, 2014 Ark. 17, 2014 WL 186011.   *Leach v. State*, 2015 Ark. 163, 7, 459 S.W.3d 795, 800 (2015)

Similarly, under federal law, accomplice liability exists if "before or at the time the crime was committed, he knew the offense was being committed or was going to be committed; he knowingly acted to encourage, aid, or cause the offense ...." *United States v. Delpit*, 94 F.3d 1134, 1151 (8th Cir.1996). *Sensabaugh v. Dormire*, 279 F. Supp. 2d 1071, 1074 (E.D. Mo. 2003).   Also, as previously pointed out, Voluntary Intoxication is no defense to a criminal act.

Clearly the court was correct in its determination that petitioner's claim did not warrant relief. The court's decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; nor was its decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See 28 United States Code* § 2254( d).

**Ground Eight:** Counsel failed to procure the attendance of witnesses material to defense. (Id., p. 17).

Petitioner's claim is that he received ineffective assistance of counsel because his attorney failed to procure the attendance of witnesses material to his defense.   The Petitioner claims that his attorney failed to procure the attendance of Deanna and Ashley Schneider, and Adam Kyle who would have testified about certain alleged threats made by Tyler Prine who was one of the witnesses against the Petitioner at his trial.

Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Whitmore v. Lockhart*, 8 F.3d 614, 618-19 (8th Cir.1993) (*quoting Strickland*, 466 U.S. at 691). "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978)."To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir.1996) (quoting Stewart v. Nix, 31 F.3d 741, 744 (8th Cir.1994)).

In this case the Petitioner's attorney had the witnesses present for trial and a hearing concerning the relevance of their testimony was conducted by the court prior to trial. According to the Petitioner's Brief he states that "After the jury were selected a hearing was held in the jury's absence regarding Tyler Prine threatening bodily harm to defense witnesses who are material and relevant to the issues. Honorable Judge Looney decided that Tyler Prine's threats toward defense witnesses, and their families, with harm if they testified had no bearing on the issues and therefore would not be brought to the jury's attention, and with that ruling also closed the door regarding making the jury aware of Tyler Prine's threats toward Christopher Casey because Tyler Prine believed Christopher Casey had stolen his marijuana." "Petitioner's witnesses material to his defense were allowed to leave the courtroom without giving their testimonies because they were in fear of their lives, and the lives of their families." (ECF No .1, p. 55).

The Petitioner's claim that his attorney failed to produce witnesses favorable to his case is clearly without merit.

## C.  Motion to Amend:

On December 15, 2017 the Petitioner filed a Motion for Leave to Amend his Section 2254 Petition (ECF No. 34) contending 1) that his attorney Randy Rainwater failed to communicate a plea offer, 2) that his attorney Andi Davis was ineffective on several new grounds, and 3) that a conflict of interest existed between attorney Davis and the state prosecutor. The state filed its Response (ECF No. 39) on December 29, 2017 and the court denied the motion on January 4, 2018. (ECF No. 42).

### 1.  Failure to communicate plea:

The court has previously addressed the failure to communicate a plea claim and found it to be meritless because of the testimony of the Prosecuting Attorney, Tim Williamson.

### 2.  Ineffective Assistance of Counsel:

Petitioner seeks leave to assert for the first time in federal habeas claims that his trial counsel was ineffective because she made the last-minute decision to not call one of the retained expert witnesses; she failed to effectively cross-examine State's witness Tyler Prine; and she failed to preserve a claim of trial court error for review on direct appeal. (Doc. 34 at 7-8).   These claims are not of the same type and time as the ineffective assistance claims raised in the original petition. In his original petition, he claimed that counsel was ineffective because she failed to communicate a plea offer, failed to request an accomplice jury instruction, and failed to call non-expert witnesses material to the defense.

Under AEDPA timeliness is determined on a claim-by-claim basis. *DeCoteau v.*

*Schweitzer*, 774 F.3d 1190, 1192 (8th Cir. 2014). Otherwise, "[a] defendant, by filing one timely claim, could resurrect previously time-barred claims—a result the drafters did not intend." *See Mayle,* 545 U.S. at 662 ("Congress enacted AEDPA to advance the finality of criminal convictions."). These asserted claims are time barred.

### 3.    Conflict of Interest:

The Motion to Amend contends that Ms. Davis had a conflict of interest because she was allegedly in a sexual relationship with prosecutor Tim Williamson at the time charges were filed against the Petitioner.

In order to prevail on an ineffective assistance of counsel claim based on [a] conflict of interest, a defendant must show that an actual conflict of interest adversely affected his lawyer's performance. *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir.1992) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), made it clear that an actual conflict of interest will not be inferred merely from law partners' representation of co-defendants with antagonistic defenses, even where the partners discussed each other's cases, shared common research, or otherwise collaborated to an extent short of sharing their clients' confidences.

In his Motion to Amend the Petitioner asserted no fact on how his attorney's alleged relationship with Mr. Williamson prejudiced him at trial. While the Motion alleges several attorney errors there is no nexus between the alleged errors and the alleged relationship with Mr. Williamson. Indeed, at the time of trial Mr. Williamson was no longer the prosecutor on the case.

### III. Conclusion

Based on the above, I recommend that the instant petition be dismissed with prejudice.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 12th day of March 2018.

*/s/ J. Marschewski*

HON. JAMES R. MARSCHEWSKI
U. S.   MAGISTRATE JUDGE